Rangel, your honor. Good morning. May it please the court, Anthony Colombo on behalf of defendant appellant Juan Rangel. Mr. Rangel's sentence must be vacated by this court and this court must remand for Mr. Rangel to be resentenced because the district court clearly erred in considering Mr. Rangel's inability to pay restitution as an aggravating factor in imposing the sentence. And in addition, the district court failed to provide adequate notice under Rule 32H that they were going to, he was going to impose a departure through the mechanism of consecutive sentences. And in addition, there were a number of other errors during the sentencing that were raised in my briefs. In regards to the use of inability to pay restitution to increase the sentence as an aggravating factor, it is well established that the Constitution forbids imposing a longer term of imprisonment based on a defendant's inability to pay restitution. It is unconstitutional and prohibited for a sentencing court to impose a longer term of prison as a substitute for a monetary penalty. Now, in this case, the record is replete with comment after comment by the district court concerning Mr. Rangel's inability to pay restitution. Was there an alternative monetary penalty that was proposed to be imposed by the court that was not? Well, what the court commented on and what the court was focused on was whether Mr. Rangel had the ability to pay back the agreed restitution. Well, it's established. The answer to my question apparently is no. The court did not decline to impose a monetary penalty. No. And as a result, imposed additional imprisonment as a substitute. Well, what the court did was impose as far as you can tell me. The answer to my question is no. Correct? Well, I The substitution did not happen. You're trying to infer or apply case law that says you can't impose extra sentencing time because you're not going to impose a fine. He imposed an order of restitution. It was recognized your client wasn't going to be in a position to pay the restitution. Well, I think I would agree that the court imposed a significant 22-year custodial penalty, which is seven years beyond what the parties agreed to, in addition to the 19.5-minute restitution. And substantially less than the maximum penalty. It is. However, Your Honor, what I think what Your Honor is saying is that the case law is narrow, but I believe that the case law is much more narrow or much more broader than what Your Honor has implied. I'm actually trying to say you are trying to extrapolate from case law. This doesn't fit within the existing case law. You're trying to apply it to a circumstance that's slightly different. No, Your Honor. Absolutely, this does fit within the existing case law, and it fits within a recent decision that this Court issued in United States v. Burgum. So in Burgum, we said the district court went wrong in saying this inability to pay is an aggravating factor. What's the closest thing here? Because the district court certainly mentions the impact on the victims, but it wasn't clear to me that he focused it as an aggravating factor. Well, I think the only distinguishing factor between this case and Burgum is that the – in Burgum, the district court said this is an aggravating factor. Right. The fact that he can't pay restitution is an aggravating factor. And that's what the – That you can't do. And – but that's what the record in this case makes clear. Although the judge did not use that term, aggravating factor, it makes clear that that's what was on his mind. And it's – the record is – And what's the best language for that? Well, I think on – and I'll use for interest of conformity the government's excerpt of record. In looking at the excerpt of record, we can go to page 139, and the district court makes this comment, which I think is probably the most egregious. I think tellingly, Mr. Rangel has come here today without a penny to offer you. He has made no efforts to borrow money from his friends or people who have written letters on his behalf for – to attempt to make a good faith effort to return any monies to you. I think – So he's addressing the victims in this – this is part of his Great American Dream talk. Well, it – And the victims have come in and said, here's all the pain we've suffered, and now he's addressing the victims to say that the defendant won't be able to – or probably will not be able to make up any of the lost funds they entrusted to him. What makes this analogous to what was spoken in – what the district court said in Burgum? Well, it – because the court has to just – the court can't just focus on – on one of the comments. You asked me for what I thought was the most egregious. What's the most – what's the closest to the statement in Burgum? I think in – in looking at the record as a whole and how the court approached this, from the beginning of the sentence, the first thing that the judge asked was, how much of the $19.5 million has Mr. Rangel been able to compensate the victims, and what is his plan for compensation, if any? Now, I responded to the court that at this point, Mr. Rangel does not have the means to provide restitution. I'm appointed counsel. He's been in custody for – for two years. He doesn't have any – Because the loss to the victims hasn't been diminished. That's the way he should take into account is the loss to the victims. Now, at that point, because when the court is informed that Mr. Rangel does not have the ability to pay restitution, the inquiry should have ended. And the inquiry should have ended because I would agree that one of the factors the court may consider in imposing a more lenient sentence, which – which the – the Ninth Circuit law allows and which the Constitution allows, is how much restitution has been paid, what effort has they made – have – have been made to pay it back. But in this case, the court's inquiry didn't stop there. The court then said to the – to the government, does Mr. Rangel have any information – or does the government have any information Mr. Rangel is in control of monies or accounts that have direct or indirect access to that – proceeds related to the fraudulent scheme? And this is on government's excerpt of records 76 to 77. And the court said, no, at this time, Mr. Rangel does not have any proceeds to – to pay the restitution. Now, I – at that point – It's not a legitimate inquiry. It is a legitimate – I mean, there's a lot of money. Where'd it go? It's kind of a natural question. It is a legitimate inquiry. And I would say this, because if the court looks at Williams and it looks at Bearden, the cases cited in – in Burgum, if it – if an unwillingness, the court can enhance the sentence. But in this case, there was absolutely no finding – Well, in this case, you – you – you have to stretch to say the court enhanced the sentence because of his inability to pay. The court recognized the inability to pay, but how do we get past the point that the victims lost more than the judge required in – him to repay? Well, the – the victims – the agreement was 19.5 million. That's what the victims lost. There's – I'm not disputing that. That was in the agreement. And that's the restitution that the court had ordered. So I'm not saying that. In other words, they may have lost more, but they agreed on 19 plus. Well, the – I think that Mr. Rangel pled guilty within 30 days of – of the time of the indictment. We – we agreed to every increase – Well, his – his inquiry is pretty clear. The reason for his inquiry to the amount, do you have any information, government, that he has some assets stored away, hid away or something? And the government answers correctly, I guess. They – they answer no. But the – but then the inquiry doesn't stop there. So now that the court is aware that Mr. Rangel does not have the – what the restitution is, Mr. Rangel does not have the ability to pay the restitution, the court isn't – or the government has no information that Mr. Rangel has – has had faith in not paying. But the court doesn't stop there. The next comment is, on excerpt of record, government excerpt of record 79, well, one of the factors for the court to consider under 3553A is restitution to the victims. That's correct, isn't it? So it – it is. It is, but not in an aggravating way. So the victims are out approximately 19.5 million. Does Mr. Rangel have any sums – this is the second time – that he can return – that – that he can turn over or return to the We have several. And one thing is presented in – in the victim statements that they would like and hope that some of their monies would be returned. And what I'm hearing from counsel and from Mr. Rangel is that it's probably not going to happen. And then, again, I advise the court what Mr. Rangel's situation is, that he doesn't have the ability to pay and that the government doesn't have any information that he's hiding anything. And what the court then responded in government excerpt of record 80 was, well, I guess I'm not surprised. And I would be – I would not be surprised if Mr. Rangel has assets in either Mexico or in other locations that he would have access to either directly or indirectly. However, that is more speculation on my part. But I would not be surprised if that is the case. Now, it doesn't stop there. So let me just ask you, though. I mean, we've looked at the record in these statements. What you want us to do is to infer from his discussion of your client's inability to pay or statement that he's unable to pay, to infer that that entered into his determination of the appropriate sentence. Is that correct? I think it's clear from the record, Your Honor, that that inference is more than reasonable. And I think under Burgum, that – what's important is that in Burgum, the district court judge mentioned only once. So in Burgum, there was an express statement. And you're saying that based on all of this – his dialogue and the – his recurrence, the district court's keeping coming back to this point, that even though there wasn't an express statement, we should extend Burgum and say where you can make a reasonable inference that that was on the district court's mind, that's inappropriate. Is that correct? I think from reading the record, it's clear that this was a factor that the court was weighing in approaching his – what sentence he was going to impose. And under Burgum, even the mere mention of it once, where you're – the court – even if the court uses other legal factors. And in this case, I would submit that the court did consider other factors. But in – There was no express. I guess my question is, would we have to extend Burgum? Burgum focused on an express statement. Here, no express statement. But you're saying there's enough there so that the inferences may be inescapable. Is that – is that correct? Yes, Your Honor. I think that that is a correct characterization of what we're saying. And I think tellingly, if you look at excerpt of record 48 through 49, when I objected to the use of the inability to pay restitution, if you look at the court's response, what the court says is that it's not using the inability – the court does not say I'm not using that as a factor. What the court addresses is the actual other, I think, egregious comments that the court says, look, I'm not using – I'm not going to use that. There's no evidence of that. I'm not saying that I'm going to use any – considering that he has other assets. That's speculation. Now, I think at that point when I objected, I gave the district court the opportunity and I specifically objected using the language, the court's consideration of the inability to pay restitution. The court didn't even address that. So I think it's clear in the record that this court used to aggravate Mr. – as an aggravating factor, the fact that Mr. Rangel had an inability to pay restitution. And under Burgum, it's clear that it's impermissible. How does his response say what you say it says? I mean, I'm looking at his response, and he's responding not so directly to what you pose as to what he thinks is the inference of what you pose. That is, your client is hiding money someplace and ought to cough it up and isn't, so I'm going to whack him for it. He's saying he accepts the proposition that your client doesn't have access to funds, and I'm not sentencing because of that. Well – What's wrong with that? Well, because, Your Honor, you have to – you have to read the entire record, and on occasion after – I did. I have. But I'm guessing. But you – in taking that in context, on a number of occasions, the district court stated, I'd be surprised if Mr. Rangel isn't hiding something. I would be, too. Hey, where'd the money go? But he accepts that proposition and says, okay, I won't sentence based on that. And on three different occasions, the court – Well, do you know where the money went? No, Your Honor. I didn't. Your client won't be able to use it to pay his lawyer. Well, I'm afraid – You wish. You wish. That certainly did not happen. Why don't we take the judge's comment – I'm looking at what you focused us on. Why don't we take that at face value? The court sentenced the defendant for the reasons articulated, and he gives reasons. And none of the reasons are because defendant can't pay. Well, I think it's clear, as I said, and I would agree with Judge Acuda's comments, that the clear inference from the record is that this was a factor that weighed heavy on the court. This was a factor that the court used, and this was a factor that the court was not supposed to use. And under Burgum, I think that the case should be remanded for resentencing. Now, the other issue that – What would we say if we were remanded for resentencing? What would we say? Well, I think that you would have to advise the district court that the inability to pay restitution is an aggravating factor. We'd have to say to him, you lied when you stated the reasons you sentenced. We know from this record conclusively that you had in mind the fact that he didn't make restitution. Well, I don't think that you would have to say that, Your Honor. Almost, because he listed why he sentenced. No, I disagree, Your Honor. Didn't he list the reasons he made the sentence? He did list several of the reasons, but Burgum makes it clear. So wouldn't we have to say you lied when you gave these reasons? The real true reason is his inability to make restitution. No. I think what you're saying is it was clear from our review of the record that this is one of the factors that the court weighed. And under Burgum, even though the court may have appropriately taken all of these other circumstances into account – I have a question that you asked. What language are you relying upon? What in the record are you relying upon to say it's clear that this was the reason? Well, I think in reading the record in totality and the reference after reference concerning Mr. Rangel's inability to pay, coupled with the court's comments concerning his speculation about Mr. Rangel having access to funds and his belief that Mr. Rangel was hiding funds in the absence of evidence, I think when you consider those, that it's clear that this was something that weighed heavily on the court's mind. And I think even if the district court had other justifiable reasons to aggravate the sentence, and in this case there may have been, that simply using an inappropriate factor is something under Burgum that requires reversal. Now, in turning to, I think, which – You're over time and your brief has done a good job of laying out the issues. I'll give you a minute for rebuttal, but let's hear from the government.  That's fine. Thank you. May it please the Court, Jim Bowman on behalf of the United States. I'll start with the Burgum issue since it does seem that that is a focus of both defense counsel and the court. It does appear that the judge was none too happy with this defendant and none too happy with the fact the defendant hadn't paid restitution, hadn't gone to his friends to borrow money, hadn't come up with money. And it seems to be lurking in the back of his mind, which is natural because it's lurking in the back of my mind. Some doubt as to exactly where the money went and does the defendant really not have any access to it. Isn't that lurking around in the sentence? But, Your Honor, I think under 3553A7, a court is supposed to consider whether a defendant – whether there will be funds to pay back to victims. That's something the court is supposed to inquire about and consider at the sentencing. Can a defendant be whacked because he doesn't come up with funds? No, Your Honor. And in fact, I don't think that that's, as the court has pointed out, and I'd like to go over some of the areas to address what defense counsel said, I don't think that that's what happened here. At least it's not based on the statements made by the court. And we could talk about whether then it can be inferred from holistically looking at the entire body of work at the sentencing. But I think, first, the district court is required, and I don't think Burgum is inconsistent with this, it's required to consider restitution to the victims. And during the context of the sentencing hearing, there were, I believe, two categories of comments by the district court regarding restitution. First, it questioned the parties regarding efforts to locate additional funds, which it's supposed to do to find out is there going to be restitution to pay to the parties. There's approximately $20 million missing. Where did it go? Are we going to be able to pay some money back to the victims here? If we ---- Actually, digressing for a second, has the money been tracked down? No, Your Honor. I mean, actually, I'm bound by what's in the record. What is in the record is that a restitution order was issued after this hearing. I believe it was 90 days later, and it's something in the order of $19.322 million with no funds yet paid back. What was ---- There was some money forfeited, a very negligible amount, and some property forfeited at the outset of the investigation, which we addressed to the court in response to exactly that line of questioning. We went over in detail the money that was transferred to Mexico. We went over in detail the related forfeiture action because that was what the court was inquiring about. Are there going to be funds to pay back to the victims who are here today? And so the court noted that the plea agreement required a defendant to pay restitution and asked defense counsel if he was able to pay. The court noted that it must consider restitution to the victims, and they would like their money returned. The second category of questions really was responding to the victims, who I believe Judge Yakuta noted there were many allocutions, 15 witnesses, victims allocated to the court, and many of them said, you know, Mr. Runhell, I want my money back. I'm having a tough time. I'm having problems with my family. Please give me my money back. Whatever you can do. That was in addition to 90-plus victim statements, which also said, you know, I almost don't even care about this sentence. I just want my money back. Now, the court was telling these victims, and it's clear that many of the comments that defense counsel was raising come up actually not responding to Mr. Runhell or saying I'm going to impose this sentence because you don't have money. He's responding to the victims. He's saying, look, I know you guys all said you wanted your money back. I'm telling you it's likely not going to happen. So where he says, first of all, in my experience in these types of cases, it's not likely in the court's view you're going to receive restitution from Mr. Runhell. So under 3553A7, it's not an error to inquire about restitution, and it's not an error to tell the victims they're probably not going to get their money back. So and as the court noted, there's not a single point at the hearing where the judge said I am considering this as an aggravating factor, that because you cannot pay these victims, you know what, I'm going to ratchet your sentence up. Well, if he said that, you know you'd have a problem. We would, and we don't, because he did not say that. In fact, he said he explicitly identified the reasons why he was imposing a higher sentence, none of which had to do with he didn't say, you know, I'm troubled because, you know, after we've heard about all this, there's no money to pay back. I'm really troubled by that, and I think that deserves a higher sentence. That's – that was similar to the language in Burgum where it was, look, he doesn't even have the ability to pay a fine. If you were on the other side, though, you would take that very same language and argue that it suggests that he had in mind the inability to pay restitution when he sentenced. Your Honor, I think you – Wouldn't you if you were on the other side? Your Honor, I don't – That same language. I don't think that's an inference that you can draw from the context of the statements. Because when he then decided to impose sentence, when he's not addressing the victims or inquiring about the amounts, what he says is, here's why I'm imposing my sentence. I'm imposing my sentence because the guideline range doesn't capture the emotional distress that defendants cause to members of the community, because he's dangerous to the community, because he was callous in the way he carried out this crime. He identified exactly the reasons why he was going to impose the sentence that he did and then said, and for the record, I am not taking into account in imposing the sentence the fact that you don't have assets to pay back to the victims. So based on this record, I don't believe it can be fairly stated that the court considered restitution as an aggravating factor or even looking holistically at his comments and trying to infer what his intent may have been if you could even extend Burgum that far, which would be problematic for a number of reasons. But even if you tried to do that, I don't think you could say on this record that that's what the court was doing. Unless the court has any other questions on Burgum, I can move to some of the other areas of defendant's appeal. These weren't addressed in the defendant's oral argument, but first the issue of whether the sentence was imposed in excess of the total punishment. This completely ignores Section 3584. 3584 provides that the district court has the authority to impose sentences consecutively to the extent needed to achieve the total sentence, as long as it considers the 3553A factors in doing so. And that's exactly what happened in this case. The judge didn't expressly reference 3584, but the judge said, look, taking into account the 3553A factors, I don't think that the high end of the guideline range is appropriate. I think I should impose this sentence. And in doing so, to enact that sentence, it did it concurrently or consecutively. Additionally, I know the defense counsel wanted to raise the issue of notice. Defense counsel's entire premise is that where a judge imposes a sentence consecutively, that that must be considered a departure as opposed to a variance. Because it's clear after Irizarry that Rule 32H notice doesn't apply to a variance. That's absolutely clear. So then the only question is, did 5G 1.2, was it trying to impose some kind of limit? And if you put in a consecutive sentence, that that's now somehow magically a departure. But when you look at this Court's definition and the Supreme Court's definition of a departure versus a variance, it's clear that what the Court did here was a classic Booker variance. So unless the Court has questions on this issue or other issues, I'm prepared to submit. Thank you. Thank you. Mr. Palmo. Briefly in regards just to the response of the use of the inability by restitution, I would – I hate to use this oversimplified cliché, but in looking at the record, if it walks like a duck, it quacks like a duck, it looks like a duck, it is a duck. And I would submit on that. But in regards to the government's – what I want to respond to is – Even if this duck spoke to you in chicken language saying, I'm not a duck, it'd still be a duck. Yes. Because the judge said, I'm not taking that into consideration. So what do we do? We say, yes, you did. Yes, that's my position. And we would say it if the record cried out, yes, this is so. But we'd have to say it cried out and point to it specifically. What in the record makes the cry? I think you have to look at the record in the totality. And I think that the record would belie the – any statement by the judge that this wasn't an issue. And I don't think the judge said that. But in turning to the failure to give notice for Rule 22. Yes, he did. Didn't he specifically say? No, he did not specifically say that. In looking at the record, he did not specifically say that. The judge did not specifically respond to my objection for the inability to pay restitution. What the judge responded to, I think, and what probably the judge was concerned about, was him speculating about hiding assets. And that's what he said he was not going to use. Yes. Now, in looking at the failure to give notice under Rule 32H, the issue here after Azari is whether this was an upward variance or it was a departure. Now, the government's characterized this as a variance. And I would agree that under Azari, Rule 32H does not require notice. But it's clear from this case, this circuit's precedent, that the imposition of consecutive sentences in this circumstance was a departure. And that's true post. Well, is it? I mean, that's what puzzles me. I don't know. Well, with the C change in sentencing brought by Booker, a lot of those rules just don't make any sense anymore. Well, I think, and I'll say, this was – U.S. v. Hahn was a Ninth Circuit case. It's 557 Fed Third 1099. And at page 1101 and 1102, it's a case from 2009. What this circuit recognized post-Azari is that a district court's decision to impose a consecutive sentence where the guidelines would otherwise require a concurrent sentence constitutes a departure requiring Rule 32H notice. Now, in 2009, Hahn cited U.S. v. Williams and Brady and some of the other cases that were pre-Azari in 2002. But so the question here is, do the guidelines in this case, would they otherwise require a concurrent sentence? And, yes, they do. And the reason why they do is because the total punishment when you calculated and it was agreed to by the parties. I don't want to be clever with you, but is this rebuttal? Yes, it is, Your Honor. Are you rebutting what he argued? The last thing that the government argued was the failure for the court to notice the defendant on the consecutive sentences, to impose consecutive sentences. That's what I'm responding to. So when you look at the total punishment here, it was 188 to 235 months. Now, the statutory maximum of Section 1341 is 240 months. So the statutory maximum for the higher statutory penalty is 240 months. So the total punishment was within that statutory maximum. So in order for the judge to impose consecutive sentences, he would have had to impose a sentence outside of that. So the guidelines under 5G1.2C state in this circumstance that the sentences must be concurrent. Now ---- So Hahn says that the parties don't dispute that this case falls under 5G1.3B, that the decision to impose consecutive sentences where that applies is a departure and that as a result Rule 32H required notice. So the points you want to make based on Hahn were conceded by the parties, right? The court didn't. We didn't hold that. We just moved on from those concessions. Well, I think, Your Honor, that Hahn specifically recognized what Williams and Brady had previously held in the Ninth Circuit is that if the guidelines require a concurrent sentence, imposing a consecutive sentence that exceeds those guidelines, it's a departure and it's not a variance under ISARI. I'm just looking at this concession. So you think that the case, despite the concession that we decided that issue, that that ---- because the issue wouldn't have been litigated if there was a concession about it. Well, I think Your Honor could look at it as necessary to the holding of Hahn. But even if we don't consider Hahn, it's still, if you look at Williams and Brady, it's still clear that this imposition of consecutive sentences was a departure and it required notice. Don't we have to look at what the Court said? It says, this Court must review or consider each of the factors enumerated. Do you recall the language I'm referring to? Yes. Don't we have to do the same thing I suggested earlier? Well, Your Honor, I think that in looking at it, the Court, and this was another issue that we raised, I don't think the Court was really clear in the statement that it would make. Now, I think for the party's benefit, and this is the purpose of Rule 32H, had the  hearing, we would have been able to more clearly address these issues, and that's the purpose of Rule 32. But in this particular case, this was, imposing consecutive sentences was a departure because it did exceed the total punishment in the guideline, and there was no notice in this particular case. Neither 1341 and 1957 requires consecutive sentences. 3584 doesn't require consecutive sentences. 5G 1.2c specifically states that the sentences should be concurrent. The parties agreed to concurrent sentences. And neither the PSR nor the Court made any statements about consecutive sentences. And I think that in this case, it was a departure. It required notice. There was no notice given. And under Evans v. Martinez, it's clear it was plain error. So I think the Court has to remand for resentencing for the failure to give notice pursuant to Rule 32H, and I would submit on those comments. And I thank the Court for indulging me with the extra time. Thank you for your helpful comments. Thank both counsel. The case just argued is submitted. That concludes this morning's calendar, and we're adjourned. All rise.
judges: Farris, Clifton, Ikuta